**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

NEWPORT NEWS SHIPBUILDING AND
DRY DOCK COMPANY,
                              *Petitioner,*

              v.

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS; CLYDE
MOODY,
                              *Respondents.*

No. 05-1495

NEWPORT NEWS SHIPBUILDING AND
DRY DOCK COMPANY,
                              *Petitioner,*

              v.

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS; CLYDE
MOODY,
                              *Respondents.*

No. 05-2168

On Petitions for Review of Orders of
the Benefits Review Board.
(05-0424)

Argued: September 19, 2006

Decided: December 13, 2006

Before MICHAEL and GREGORY, Circuit Judges,
and Thomas E. JOHNSTON, United States District Judge for the
Southern District of West Virginia, sitting by designation.

Petitions denied by published opinion. Judge Michael wrote the opinion, in which Judge Gregory and Judge Johnston joined.

---

**COUNSEL**

**ARGUED:** Jonathan Henry Walker, MASON, MASON, WALKER & HEDRICK, P.C., Newport News, Virginia, for Petitioner. Gregory Edward Camden, MONTAGNA, KLEIN, CAMDEN, L.L.P., Norfolk, Virginia, for Respondents. **ON BRIEF:** Charlene Parker Brown, MONTAGNA, KLEIN, CAMDEN, L.L.P., Norfolk, Virginia, for Respondent Clyde Moody.

---

**OPINION**

MICHAEL, Circuit Judge:

Newport News Shipbuilding and Dry Dock Company (Newport News) petitions for review of orders issued under the Longshore and Harbor Workers' Compensation Act (the Act) by the Benefits Review Board (BRB) of the United States Department of Labor. The BRB orders affirmed the decisions of an administrative law judge that (1) determined the medical cause of a knee ailment suffered by Clyde Moody, a Newport News employee; (2) ordered the company to provide appropriate benefits; and (3) awarded Moody attorney's fees under § 28 of the Act, 33 U.S.C. § 928. Because we reject Newport News's arguments that the medical causation issue was not ripe and that attorney's fees were not warranted, we deny the petitions for review.

I.

Moody has worked as a welder and mechanic for Newport News for over thirty years. His work requires a great deal of crawling and climbing. In February 1999, while on the job, Moody bumped and injured his left knee as he crawled to the bottom of a tank. He was treated at the shipyard clinic and placed on light duty "for awhile." J.A. 26. Moody did not claim compensation for this injury. On July

5, 2001, he injured his right knee while crawling in a tank. As a result of this injury, he underwent arthroscopic surgery on October 3, 2001, and collected temporary total disability benefits until January 7, 2002. In May 2002, several months after returning to work, Moody reported pain in his left knee during an office visit with his orthopedic specialist, Dr. Thomas Stiles, who ordered an MRI. The MRI revealed a meniscal tear in the left knee, and Dr. Stiles informed Moody on July 8, 2002, that surgery was needed. Later that month Moody sought authorization for the procedure from Newport News. He maintained "that the left knee [condition was] a compensable consequence of his [July 5, 2001,] right knee injury." S.J.A. 3. Moody's position was based on Dr. Stiles's opinion that Moody's "problem with his left knee . . . [was] a result of putting extra pressure and stress on his left knee following his right knee injury and surgery." J.A. 56. Newport News contested Moody's right to compensation, claiming that the injury resulted from the February 1999 incident rather than from weakness of the right knee after July 2001. Moody engaged a lawyer and continued to pursue compensation under the 2001 claim. Newport News's position regarding the date of the underlying injury was of concern to Moody because the company contended that any claim for disability benefits under the 1999 injury would be barred by the one-year statute of limitations in 33 U.S.C. § 913(a). (A claim for medical benefits would not be subject to a time bar, however. 33 U.S.C. § 907.)

In October 2002 a claims examiner in the U.S. Department of Labor's Office of Workers' Compensation Programs (OWCP) held an informal conference with the parties to consider the issue of medical causation (or the date of the underlying injury). After reviewing medical records, the claims examiner "recommend[ed] that [Moody's] present left knee problems be accepted as a result of the July 5, 2001 right knee injury." J.A. 110. In other words, the examiner recommended that compensation for the left knee ailment be paid under the earlier 2001 claim. Newport News rejected this recommendation. The company advised the OWCP's district director in March 2003 that it would "pay for the left knee medical treatment under the 1999 left knee injury, but not under the 2001 right knee injury." J.A. 102. In the meantime, Newport News refused to pay bills submitted by Dr. Stiles for non-surgical treatment of Moody's left knee condition. A company claims manager advised Dr. Stiles's office that "this matter

will be further litigated." J.A. 107. The company's position forced Moody to request a hearing before an ALJ on the issue of medical causation concerning his left knee condition.

Newport News argued before the ALJ that the causation issue was not ripe for adjudication because Moody had not suffered a disability resulting in lost time from work. The ALJ rejected this argument and found that "[t]he left knee impairment is a consequence of the work-related right knee injury." J.A. 149. The company was ordered "to provide appropriate benefits, as needed." *Id.* The ALJ also awarded Moody attorney's fees under 33 U.S.C. § 928(a). The BRB affirmed the ALJ's decisions, but noted that Moody could not collect a fee award for obtaining compensation for temporary total disability until he underwent surgery and was temporarily disabled.

Newport News petitions for review of the ripeness determination and the award of attorney's fees. Both matters present legal questions that we review de novo. *Va. Int'l Terminals, Inc. v. Edwards*, 398 F.3d 313, 315 (4th Cir. 2005).

II.

Newport News argues that the medical causation issue was not ripe for adjudication *by the agency* because Moody was in essence making a claim for future disability benefits. The traditional ripeness doctrine, which derives in part from Article III limitations on judicial power, does not apply to administrative decisionmakers. *Chavez v. Dir., OWCP*, 961 F.2d 1409, 1414 (9th Cir. 1992). Nevertheless, because "[a]dministrative adjudicators have an interest in avoiding many of the problems of prematurity and abstractness presented by unripe claims," these adjudicators need the leeway to "abstain[ ] on the basis of ripeness." *Id.* (quotation marks and citation omitted). A separate ripeness analysis has not been developed for administrative decision-making. We therefore adopt Newport News's suggestion and apply the traditional analysis, a practice routinely followed by federal courts in reviewing whether an issue was ripe for decision by an administrative tribunal. *Id.*; *Ingalls Shipbldg., Inc. v. Dir., OWCP*, 102 F.3d 1385, 1388 n.4 (5th Cir. 1996).

Under the traditional analysis we determine whether an issue is ripe for resolution by evaluating the issue's fitness for decision and "the

hardship to the parties of withholding . . . consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967). Typically, an issue is fit for resolution if it is purely legal and does not depend on undeveloped facts. *Id.* In assessing hardship, we examine the immediacy and degree of hardship the party seeking relief will suffer if adjudication is delayed. *W. Va. Highlands Conservancy v. Babbitt*, 161 F.3d 797, 801 (4th Cir. 1998).

Newport News argues that there will be no disability until Moody submits to surgery and that the agency adjudicators "could not possibly decide the issue of [disability] causation ahead of time." Petr.'s Br. 12. Specifically, the company says that the factual predicate to determine medical causation did not "fully exist" when the ALJ and BRB decided the issue. *Id.* We agree with Moody that all of the facts necessary to determine the cause of his left knee ailment were placed into evidence at the hearing conducted by the ALJ. The record included medical opinions from qualified orthopedic specialists as well as Moody's pertinent medical records. This evidence addressed the issue of medical causation, and there is solid evidence to support the ALJ's finding that Moody's "left knee impairment is a consequence of the work-related right knee disability" caused by the 2001 injury. J.A. 149. No subsequent facts would change the ALJ's determination of causation. The only unknown facts are the date Moody will undergo surgery and the duration of his resulting disability. Neither of these facts will affect Newport News's liability to pay appropriate compensation benefits.

The prospect of hardship to Moody supports the decision of the agency judges to determine the cause of his left knee ailment prior to surgery. The record at the time suggested that if the condition had been attributed to Moody's 1999 left knee injury, the company would have asserted the statute of limitations as a defense against a request for disability compensation. The perceived risk of receiving no compensation if he was required to miss work during recuperation could have impacted Moody's decision about whether to undergo surgery. The timely determination of medical causation afforded Moody the latitude to make this decision with certain knowledge of his compensation prospects during any period of temporary disability.

For these reasons, the issue of medical causation was ripe for determination by the agency adjudicators.

III.

Newport News also argues that the ALJ and BRB had no basis under the governing statute, 33 U.S.C. § 928, for requiring it to pay attorney's fees in this case. Under § 928, attorney's fees may be assessed against an employer in two circumstances. First, § 928(a) provides for a fee award when the employer refuses to pay any compensation after receiving written notice of a claim, and the claimant thereafter successfully prosecutes the claim with the assistance of a lawyer. Second, § 928(b) provides for a fee award when the employer initially pays compensation voluntarily, and a dispute later arises about whether the employee is entitled to additional compensation.

We agree with Newport News that Moody is not entitled to attorney's fees under § 928(a). This section authorizes a fee award only if "the employer . . . declines to pay *any* compensation on or before the thirtieth day after receiving written notice of a claim for compensation having been filed from the deputy commissioner . . . ." 33 U.S.C. § 928(a) (emphasis added). Moody's left knee condition has been determined to derive from the July 5, 2001, injury to his right knee. He filed a claim for the 2001 injury, and Newport News voluntarily paid certain compensation for that injury. When "the employer initially pays compensation voluntarily after the filing of a claim, but then refuses a [later] request for [additional] benefits on the same claim," § 928(a) does not allow the employee attorney's fees for obtaining any additional benefits. *Edwards*, 398 F.3d at 317. Any compensation Moody receives as a result of the recent proceedings to determine causation would constitute additional compensation under his preexisting 2001 claim, and he must therefore look to § 928(b) to recover fees incurred in obtaining such additional compensation. Accordingly, Moody does not qualify for a fee award under § 928(a).

We conclude that Moody is entitled to attorney's fees under § 928(b). This section's threshold requirement is met: Newport News "pa[id] . . . compensation without an award" under the 2001 claim, "and thereafter a controversy developed over the amount of additional compensation, if any, to which the employee [Moody] may be entitled" for his left knee ailment. 33 U.S.C. § 928(b). To qualify for a fee award under § 928(b), Moody must show that four additional events occurred: (1) "the deputy commissioner . . . set the matter for

an informal conference" with the parties; (2) the deputy commissioner "recommend[ed] in writing a disposition of the controversy;" (3) "the employer . . . refuse[d] to accept such written recommendation, within fourteen days after its receipt;" and (4) the employee used the services of a lawyer to obtain a greater award of compensation than the employer was willing to pay. 33 U.S.C. § 928(b). These four events have occurred.

First, an OWCP claims examiner held an informal conference with the parties on October 8, 2002, to consider the issue of causation with respect to Moody's left knee condition. Second, on October 31, 2002, the claims examiner recommended in writing that Moody's "present left knee problems be accepted as a result of the July 5, 2001 right knee injury." J.A. 110. Third, Newport News did not accept this recommendation within fourteen days of its receipt. Indeed, after receiving the recommendation, Newport News refused to pay medical bills submitted by Dr. Stiles for his non-surgical treatment of Moody's left knee. The company advised Dr. Stiles's office that the matter would be "further litigated." J.A. 107. Later, the company informed the OWCP's district director that it would "pay for the left knee medical treatment under the 1999 left knee injury, but not under the 2001 right knee injury." J.A. 102. The company thus maintained its initial position that the statute of limitations excused it from paying Moody any compensation for temporary total disability following surgery. Fourth, Moody used the services of a lawyer to obtain a greater award of compensation after Newport News did not tender any payment within the fourteen days it had to respond to the claims examiner's recommendation. Moody's lawyer requested that the medical causation issue be set for hearing before an ALJ. A hearing was necessary because Moody had no assurance about payment for his medical treatment or compensation for temporary total disability during recuperation from the recommended surgery. The ALJ found that Moody's left knee condition was caused by the July 5, 2001, injury to his right knee and ordered Newport News "to provide appropriate benefits, as needed." J.A. 149. The BRB affirmed. The administrative orders assured Moody of payment for his medical expenses and disability compensation during recovery from surgery. These benefits amounted to a greater award than Moody was able to achieve prior to requesting a hearing. *See Dir., OWCP v. Baca*, 927 F.2d 1122, 1124 (10th Cir.

1991) (an employee receives a "greater award" when he gains a greater economic benefit from the administrative litigation).

Because Moody satisfies all of the requirements of § 928(b), he is entitled to an award of the attorney's fees he incurred in litigating the medical causation issue. We agree with the BRB, however, that Moody may not collect a fee award with respect to compensation for temporary total disability until he undergoes surgery and is temporarily disabled. *See Adkins v. Kentland Elkhorn Coal Corp.*, 109 F.3d 307, 308 (6th Cir. 1997).

## IV.

For the foregoing reasons, we conclude that the medical causation issue was ripe for consideration when it was litigated before the ALJ and BRB. We also conclude that Moody was entitled to the award of attorney's fees under 33 U.S.C. § 928(b) for additional compensation received under the 2001 claim. The petitions for review are therefore denied.

*PETITIONS DENIED*